**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TIFFANY M. HOWARD, Individually and as**
**the mother and natural guardian of A.M., an**
**infant under the age of 18 years,**
                    **Plaintiffs,**

         **v.**                                        **5:12-cv-870**

**TOWN OF DEWITT;**
**TOWN OF DEWITT POLICE DEPARTMENT;**
**OFFICER C. FULLER, Individually and in his**
**Official Capacity; OFFICER EDWARD MASON,**
**Individually and in his Official Capacity;**
**OFFICER THOMAS NORTON, Individually**
**and in his Official Capacity; and SERGEANT**
**KEITH BURY, Individually and in His**
**Official Capacity,**
              **Defendants.**
_____

**THOMAS J. McAVOY**
**Senior United States District Judge**


### DECISION and ORDER

## I.    INTRODUCTION

Before the Court are Plaintiffs' motions for judgment as a matter of law or in the

alternative for a new trial in this matter alleging that Defendants violated Plaintiffs'

constitutional rights.   Having been fully briefed, the matter is ripe for disposition.

## II.    BACKGROUND

This case arises out of the arrest of Plaintiff Tiffany Howard in the early morning

hours of April 9, 2011 in DeWitt, New York.   Plaintiff contends that DeWitt Police Officers

Christopher Fuller, Edward Mason, Thomas Norton and Keith Bury violated her Fourth

1

Amendment rights when they entered her apartment and arrested her for failing to let them in to check on her daughter. On the previous evening, Howard was scheduled to meet Bobby Martin, father of her daughter, minor Plaintiff A.M., at 9 p.m. at a local Barnes & Noble. A.M.'s father was scheduled to have custody of the child for the weekend. According to Howard, Martin did not show up. He had failed to show up on other occasions in the past, and Howard returned home to her apartment with A.M. Once she returned home, she went to bed, as did A.M. A.M. shared a bedroom and slept in a bed with her grandmother, Linda Howard, who lived in the area and was visiting.

According to Police, Bobby Martin told them he had attempted to keep his appointment to pick up his daughter. Martin claimed that Howard never showed up to drop A.M. off. Eventually, he went to Howard's apartment. He noticed that Howard's car was there and lights were on in the building. He tried to call, but Howard's cell phone was turned off and she did not answer. Martin then called 911 and requested assistance in obtaining his daughter as specified by the custody agreement between Martin and Howard. Martin made this call around 11:30 p.m.

What happened next is the subject of this case. Police claim that an officer arrived at the apartment shortly before 12 a.m., followed shortly by other officers. Officers claim they knocked on the door of Plaintiffs' apartment, but Tiffany Howard refused to let them in. Eventually, Defendants claim, they determined that the situation was an emergency and they entered the home without a warrant to check on A.M.'s safety. They found that A.M. was fine, but arrested Plaintiff Tiffany Howard for obstruction of governmental administration. Howard contends that she refused to open the door without a warrant, that the apartment was quiet and no danger to A.M. existed or was apparent, and that

2

officers had no reason to enter the apartment without obtaining a warrant.

Plaintiffs' Complaint was filed in the Onondaga County Supreme Court and then removed to this Court. Plaintiffs filed an amended Complaint. The Amended Complaint raised four counts. Count One alleged a malicious prosecution tort claim against Defendants Town of DeWitt, DeWitt Police Department, and Defendant Fuller, in his official and individual capacity. Count Two, raised against all Defendants, was an unreasonable search and seizure claim under the New York Constitution. Count Three made a defamation claim against Defendant Fuller. That claim alleged that Fuller knew when he laid the obstruction charge against Plaintiff that such charges would be published in the local newspaper. As such, Plaintiffs' insisted, Fuller defamed Plaintiff. Count Four alleged a Section 1983 claim for illegal search and seizure against the individual defendants.

At the close of discovery, the parties filed motions for summary judgment. After briefing and a hearing, the Court denied the Plaintiffs' motion and granted the Defendant's motion in part. The Court dismissed Plaintiffs' claims against the Town of DeWitt Police Department and Town of Dewitt, Plaintiffs' claims for violation of the New York Constitution, Plaintiffs' claims for malicious prosecution, and Plaintiffs' claims for libel against Defendant Fuller. Remaining in the case was Plaintiff's claim for unreasonable search and seizure in violation of their constitutional rights.

The case proceeded to trial. At the close of the evidence, Plaintiffs moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court reserved decision on the motion. The jury eventually found for the Defendants. Plaintiffs then filed the instant motion, seeking judgment as a matter of law

3

on the illegal search and false arrest claims or in the alternative a new trial.

## III.    LEGAL STANDARD

Plaintiffs seek judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.  Under Rule 50(a), the Court may grant a motion for judgment as a matter of law on a claim or defense if, after hearing the evidence, "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"  FED. R. CIV. P. 50(a).  If the Court does not grant that motion, a party may renew that motion after trial and may also "include an alternative or joint request for a new trial under Rule 59."  FED. R. CIV. P. 50(b).  A court may grant judgment notwithstanding the verdict "only if the evidence viewed in the light most favorable to the non-movants, without considering credibility or weight, reasonably permits only a conclusion in the movant's favor."  Doctor's Assocs., Inc. v. Weible, 92 F.3d 108, 111-12 (2d Cir. 1996). This standard is a difficult one to meet: "there must be such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise or conjecture."  Kroshnyi v. U.S. Pack Courier Servs., 771 F.3d 93, 106-107 (2d Cir. 2014) (citations omitted).

Plaintiffs in the alternative seek a new trial, alleging that the jury's verdict was against the weight of the evidence.  Federal Rule of Civil Procedure 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  FED. R. CIV. P. 59(a)(1)(A).  "'[A] decision is against the weight of the evidence . . . if and only if the verdict is [1] seriously erroneous or [2] a miscarriage of justice.'"  Raedle v. Credit

4

Agricole Indosuez, 670 F.3d 411, 417-18 (2d Cir. 2012) (quoting Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 635 (2d Cir. 2002)).  Such a motion can be granted "even if there is substantial evidence to support the jury's verdict."  United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998).  Though a trial judge "is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner . . . the court should only grant such a motion when the jury's verdict is 'egregious.'" DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998) (quoting Dunlap-McCuller v. Riese Organization, 980 F.2d 153, 157 (2d Cir. 1992)).  Thus, "a court should rarely disturb a jury's evaluation of a witness's credibility."  Id.

## IV.  DISCUSSION

### A.  Motion for Judgment as a Matter of Law

Plaintiffs argue that they are entitled to judgment as a matter of law on both of their claims.  The Court will address each in turn.

#### i.  Unlawful Search

Plaintiffs here argue that the Defendants failed to introduce evidence sufficient to support their claim that exigent circumstances justified their warrantless entry into Plaintiffs' apartment.  "'[E]xigent circumstances demand that law enforcement agents act without delay[.]'" Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999) (quoting United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990)).  The basic question in determining whether exigent circumstances exist "'is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action.'" Id.  The "'test'" for exigent circumstances is "'an objective one that turns on the district court's examination

5

of the totality of circumstances confronting law enforcement agents in the particular case.'"

United States v. Gordils, 982 F.2d 64, 69 (2d Cir. 1992) (quoting MacDonald, 916 F.2d at

769). Still, the "'mere possibility' of danger" does not create exigent circumstances."

Hurlman v. Rice, 927 F.2d 74, 81 (2d Cir. 1991).

Plaintiffs argue that no evidence existed to support the Defendants' claims that an

urgent need to offer immediate assisted to justify their warrantless entry. They point out

that Defendants admitted that they had received no information that A.M. was in any

danger or distress. Defendants testified that A.M.'s father told them he knew that Plaintiffs

were at home because he saw her car in the parking lot and her livingroom light on.

Moreover, evidence at trial indicated that Tiffany Howard had informed officers that she

was A.M.'s mother and that A.M. was not in any sort of distress. Tiffany Howard's

statement to officers that "no one is hurt and no one is bleeding" would not give a

reasonable person grounds to believe that A.M. was in immediate danger.

The evidence in the case does not support Plaintiffs' position. Defendant

Christopher Fuller testified that when he arrived on the scene that evening he spoke with

Bobby Martin, A.M.'s father. Transcript of Proceedings, dkt. # 130, at 340-41. Martin told

him that Plaintiffs had failed to arrive at the time scheduled for him to pick up A.M. Id. at

341. Eventually, he went to Plaintiffs' apartment and noticed a light on and Plaintiffs'

vehicle in the parking lot. Id. Martin tried to call and text, but got no response. Id. Martin

expressed "concern" that he had been unable to contact them. Id. Defendant Fuller

decided to go to the apartment and speak with the Plaintiff, "to make sure and check the

kid's okay[.]" Id. at 343. He wanted to give Martin "peace of mind." Id. He also wanted to

"get the other side of the story," since the situation appeared to be a custody dispute.  Id.

Officer Thomas Norton, another Defendant, had arrived by that time, and the two men

were able to gain access to the apartment building by ringing another apartment on the

security system.  Id. at 343-44.  Someone in that apartment gave the Officers access.  Id.

at 344.  Defendants went to Plaintiffs' apartment and knocked several times, getting no

response.  Id.  Finally, someone from inside the apartment asked "who is it?"  Id.  Fuller

explained that he was a police officer, and that "we're here to talk to you about what's

going on with the custody dispute"; he received no response.  Id.  Fuller and Norton

continued knocking and continued to receive no response:  "the more it went on, the more

we explained, we have concern there might be something wrong with the child, can you let

us in to see that she's okay[?]"  id. at 346.  Officers told the person in the apartment that

they were not going to take A.M. and force her to leave with her father, "We just want to

make sure she's okay.  We're concerned we're not getting an answer."  Id.

    After 20 minutes without a response, the woman finally responded by saying "I'm

not opening the door.  There's no one hurt in here, no one's bleeding."  Id.  Fuller found

this statement "very strange."  Id.  Police hadn't mentioned any concern about injuries, and

the statement was, to Fuller, "just unsettling to us at that point."  Id.  This statement led

officers to again ask Plaintiff "can we just see that she's okay?  Are you willing to bring her

to the door, let us see she's okay?  Let us in."  Id.  They called a Sergeant, continuing to

knock while they waited about five minutes for him to arrive.  Id. at 347-48.  Plaintiff did not

respond.  Id. at 348.  The officers on the scene agreed that they should enter the

apartment to check on A.M.'s condition.  Id. at 349.  Fuller testified that "something could

be wrong with [A.M.] based on our experience and . . . that whoever was on the other side

of the door was obstructing us from gaining access to that child, whether that be letting us in the apartment or opening the door and just bringing the child to us." Id. at 350. Officers went to the building manager and had him open the apartment, telling Plaintiff that "if you're not going to let us in, we're going to get the key so we can get into the apartment." Id. at 351.

Defendant Thomas Norton testified that when he arrived at the apartment building, A.M.'s father was speaking to Officer Fuller. Id. at 231. Martin told them that A.M. and her mother had not arrived at the Barnes & Noble bookstore where he had arranged to pick up his child. Id. He and Fuller decided that they should attempt to go to the apartment to discuss the situation with the other party involved in the custody dispute, Tiffany Howard. Id. at 231-23. Officers intended to "check on the safety of the child and leave if everything was status quo." Id. at 233. They knocked on the door several times. Id. at 234. After several knocks, a woman's voice asked who was at the door. Id. Defendants told her it was the DeWitt Police Department. Id. The woman's voice did not respond, though police kept knocking for 20 to 25 minutes. Id. at 234-35. During this time period, Police informed Plaintiff that they were there to check on the welfare of A.M., and that they would not leave without doing so. Id. at 236. At the end of that period, "the next thing we heard was, nobody's bleeding in here[.]" Id. They found this behavior "bizarre," and decided that they needed to go into the apartment and check on the child. Id. They called a supervisor and in the meantime continued to knock on the door and to "try to get the person to open the door." Id. at 237.

Officer Norton described the basis for the officers' decision to enter the apartment as:

8

> it met the guidelines of endangering the welfare of a child because we had a missed dropoff, we had a concerned parent in the parking lot who has had no contact with his daughter or the mother of the child, the strange response to us when we knocked on the door to not talk to us, not let us in to see the condition of the child and then the comment of, nobody's bleeding, led us to believe that there might be something wrong inside.

Id. at 237-38.  These circumstances, Norton concluded, constituted "exigent circumstances."  Id. at 238.  Officers told the Plaintiff that they intended to get a key and attempt to gain entry into the apartment.  Id. at 238.  Eventually, they did so.  Id.  Officer Keith Bury, who responded to the scene after Defendants Norton and Fulller, also testified that Plaintiff refused to respond to their knocks, creating concerns about the welfare of the child, A.M.  Id. at 272-277.  He eventually authorized officers to enter the apartment and check on the child.  Id. at 277.

Based on this evidence adduced at trial, the Court will deny the motion.  "Judgment as a matter of law is proper under Fed. R. Civ. P. 50 'only if, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'"  Caruso v. Forslund, 47 F.3d 26, 32 (2d Cir. 1995) (quoting Stubbs v. Dudley, 849 F.2d 83, 85 (2d Cir. 1988)).  Here, the evidence introduced at trial indicated that A.M.'s father had reported to police that Tiffany Howard had not dropped A.M. as she had arranged with him to do.  There was also evidence that Tiffany Howard refused to engage with officers when they arrived at her apartment to check on A.M.'s whereabouts and welfare.  Tiffany Howard's statement that "no one is hurt or bleeding," which officers testified came unprompted, could have been seen by reasonable officers under those circumstances as more suspicious than reassuring, raising concerns about the welfare of the child.  The

Court therefore cannot find that the only conclusion a reasonable jury could have reached given this evidence is that exigent circumstances did not exist and Defendants entered the residence in violation of the Fourth Amendment.

### ii.    False Arrest

Plaintiffs also contend that the Court should grant Tiffany Howard judgment as a matter of law on her false arrest claim.  Plaintiffs argue that no evidence existed to support the Defendants' claim that they had probable cause to arrest Howard for obstruction of governmental administration in the second degree, and that she must be granted judgment as a result.  Plaintiffs argue that no evidence exists proving Tiffany Howard did anything to impede Defendants from observing A.M. once they entered the apartment.  She asserts that she had no obligation to open the door or even speak to the police.  Because, Plaintiff insists, the obstruction of governmental administration charge requires that a person engage in physical interference, officers lacked probable cause to arrest her.

"When determining whether probable cause exists courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996)).  Probable cause exists when officers "have knowledge or trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Posr, 180 F.3d at 414.  The Court "must look to the 'totality of the circumstances' in deciding whether probable cause exists to effect an arrest."  Caldarola, 298 F.3d at 162 (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).  "In looking to the totality of the circumstances, courts must be aware that 'probable cause is a fluid

concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules.'" Id. (quoting Gates, 462 U.S. at 232). Proof of probable cause "is a complete defense to a claim of false arrest" in New York. Posr, 180 F.3d at 414.

Under New York law, in relevant part, "[a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]" NY CLS Penal § 195.05. The elements of the offense are: "(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995). "[T]he official function must be one 'authorized by law.'" Id. (quoting In re Verna C., 143 A.D.2d 94, 531 N.Y.S.2d 344, 345 (2d Dep't 1988)).

Plaintiffs insist that officers had probable cause to arrest only if Tiffany Howard physically interfered with an official function. Courts in New York have found otherwise, holding that "'when failing to obey [an] order creates some other hazard or interference, it can rise to the level of obstruction necessary for obstructing government administration.'" U.S. v. Marrero, 2014 WL 3611624 at * 4 (E.D.N.Y. July 22, 2014) (quoting Dowling v. City of New York, 2013 WL 5502867 at *4 (E.D.N.Y. Sept. 30, 2013)). They have also found that refusing to obey a direct police order can create liability under the statute. See, e.g., Brown v. City of New York, 2014 WL 2767232 at *7, at *7 n.8 (S.D.N.Y. June 18, 2014) (probable cause to arrest for obstruction of governmental administration when officers

11

"lawfully instructed" plaintiff to leave and she refused to do so and rejecting the idea that "interference" must by physical interference to qualify under the statute); Graham v. City of New York, 928 F.Supp.2d 610, 616-17 (E.D.N.Y. 2013) (question of fact whether officer had probable cause to arrest plaintiff for obstruction of governmental administration when there were factual disputes about whether Plaintiff had failed to provide automobile registration documents when requested by officer). In Lennon, the Court ruled that police had probable cause to arrest the Plaintiff under this statute when she refused an officer's order to vacate a vehicle. Lennon, 66 F.3d at 424.

In circumstances similar to this case, a court found probable cause existed to arrest plaintiff for obstructing governmental administration and resisting arrest when he refused to respond to the knocks of officers and orders to open his apartment door, but instead turned the volume of his television up. Johnson v. City of New York, 2008 WL 4450270 at *1 (S.D.N.Y. Sept. 29, 2008). After police entered the apartment, plaintiff resisted efforts to place him in handcuffs. Id. at *11. The Court found that "[a]n officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer." Id.[1]

_____

[1]Plaintiff cites to People v. Dumay, 23 N.Y.3d 518, 992 N.Y.S. 2d 672 (2014), for the proposition that "interference" requires "an element of physical interference to justify such a criminal charge" under the statute. Plaintiff's Brief, dkt. # 114-3, at 5. In Dumay, the Court of Appeals cited to a 1977 case to hold that "[t]he interference must be 'in part at least, physical in nature' . . . but 'criminal responsibility should attach to minimal interference set in motion to frustrate police activity.'" 23 N.Y.3d 524 (quoting People v. Case, 42 N.Y.2d 98, 102, 365 N.E.2d 872, 396 N.Y.S.2d 841 (1977) and Matter of Davan L., 91 N.Y.2d 88, 91, 689 N.E.2d 909, 666 N.Y.S.2d 1015 (1997)). Plaintiff's refusal to open the door certainly represented minimal interference designed to frustrate police activity, and the cases cited above by the Court demonstrate how such refusals fall under the statute. Dumay dealt with a Defendant who allegedly "'slammed the trunk of [the

(continued...)

Plaintiff Tiffany Howard testified that she was awoken on the night in question by Town of DeWitt police officers knocking on her door.  Trial Transcript, dkt. # 129 at 86.  She asked them what they needed, and whether they could help her.  Id.  Police asked her to open they door because "they need[ed] to check on the safety and health of my daughter and myself."  Id.  Plaintiff informed officers that they were both fine, telling them that "we didn't require any help of any police officers[.]" Id.  Police responded that Howard "need[ed] to open your door so we can check on the health and safety of your child and yourself."  Id.  Plaintiff again refused, telling officers that everyone in the house was safe.  Id.  She also asked officers if a 911 call had been placed, and whether anyone had informed them that A.M. needed assistance.  Id.  Plaintiff testified that Police did not accept this answer, but instead "just kept saying, ma'am, you need to open your door[.]" Id.  Plaintiff continued to refuse to open the door.  Id.  She testified that she went back to her daughter's room, but that officers continued to pound on the door.  Id. at 88.  Plaintiff eventually returned to the door to hear police "yelling for me to open the door and to come to the door and they demanded that I come and open up my door so they could come in." Id.  She asked police to produce a warrant, telling that "I was not going to open up my door because no one in here was hurting, no one in here was hurt, no one was bleeding, no one in here required any assistance."  Id.  When police did not produce a warrant and

_____

[1](...continued)
police officer's] radio mounted patrol vehicle with an open hand and prevented said vehicle from moving by standing behind it and preventing [the police officer] from patrolling the neighborhood.  Dumay, 23 N.Y.3d 521.  The Court addressed those facts and found probable cause existed.  The Court did not address facts similar to those in this case, but did not declare that previous cases with different types of interference decided after the 1977 case were incorrect.

13

instead told her they would kick the door down if she did not let them in, she left the door and went back to her daughter's room. Id. at 89. Police continued to pound on the door, demanding to be let in, declaring that they did not need a warrant. Id. at 90. Officers' anger increased when she went to the door a third time and refused to open the door without a warrant. Id. Eventually, officers entered the apartment. Id. at 92-93. After a conversation with the officers, Officer Fuller arrested Plaintiff. Id. at 93.

The Court will deny the motion on this point as well. The Plaintiff's testimony, in addition to the testimony of the officers cited above, indicates that Plaintiff refused a direct order from the police to open the apartment door and produce A.M. so that officers could check on her safety.[2] Under those circumstances, a jury would not be required to find that officers lacked probable cause to arrest Tiffany Howard for obstructing governmental administration. Instead, the evidence would have permitted the jury to find that Tiffany Howard–by her own admission–refused to comply with a direct order from the police. The jury reasonably found that exigent circumstances existed for police to enter the apartment to check on the welfare of A.M., and therefore Plaintiff refused a lawful order from the police. The jury's finding of probable cause was reasonable, and the motion for judgment as a matter of law will be denied in this respect.[3]

_____

[2]Plaintiffs are correct to argue that a citizen is not required to "open the door or to speak" when police knock on that person's door, nor is the citizen required to allow officers into the building without a warrant. Kentucky v. King, 131 S.Ct. 1849, 1862 (2011). That doctrine is not material to this issue, however, since the jury reasonably found that a warrant exception–exigent circumstances–applied and officers had a right to enter the building.

[3]Defendants argue in their brief that Plaintiffs have waived any right to seek judgment as a matter of law on the false arrest claim because Plaintiff, in making a motion

(continued...)

14

**B.     Motion for a New Trial**

Plaintiffs in the alternative seek a new trial on both claims.  The Court will address each in turn.

**i.     Unlawful Entry**

Plaintiffs' argument is not organized in a way that addresses grounds for judgment as a matter of law and for a new trial in a clearly separated fashion.  Instead, Plaintiffs reference the evidence and argue that such evidence was insufficient for the jury to reach the verdict it did.  They contend that none of the evidence presented at trial could cause a reasonable juror to believe that A.M. was in distress at the time police entered the apartment, nor was there any evidence that a crime was in progress, that any illegal activity was occurring, or that anyone was in any immediate danger.  Defendants' entry was merely the result of surmise or speculation.  Moreover, Plaintiffs assert, Defendants' claim that they were simply attempting to determine the welfare of A.M. does not provide exigent circumstances.

The Court will deny the motion for a new trial in this respect.  The Court cannot find that the jury's verdict was either "[1] seriously erroneous or [2] a miscarriage of justice.'"

_____

[3](...continued)
for judgment as a matter of law at the close of Defendants' case, argued only that Defendants lacked exigent circumstances to enter the apartment and thus did not seek judgment on the false arrest claim.  The Defendants' argument is moot, given that the Court finds no merit to the motion in any case.  Moreover, Plaintiff moved "for a directed verdict on liability" at the close of the evidence.  Trial Transcript, dkt. # 130 at 390. Counsel's argument concerned the lack of exigent circumstances and probable cause to enter the apartment, but Counsel clearly sought a directed verdict on both claims. Moreover, without exigent circumstances to enter the apartment, Plaintiffs could surely argue, no probable cause existed to arrest Plaintiff for disobeying a lawful order from a government official.

Raedle, 670 F.3d at 417-18.  The verdict was not "egregrious."  DLC Mgmt. Corp., 163

F.3d at 134.  The evidence summarized above demonstrates that a reasonable officer,

faced with a situation where a child did not appear for a scheduled transfer, the mother of

the child refuses to respond to police demands that they be allowed in the apartment to

check on the child's safety, and the odd comments of the mother

that–unprompted–assured the police that no one was "bleeding" in the apartment, could

have thought that an emergency situation existed that required an immediate entry.

Defendants' testimony indicates that the decision to enter the apartment was not based

simply on a general desire to check on the welfare of the child or mere surmise and/or

speculation; Defendants acted only after events indicated to them that the child was

endangered.  The jury's conclusion that exigent circumstances existed was not seriously

erroneous.  Neither was that finding a miscarriage of justice.

Plaintiffs' citation to Caruso v. Forslund does not support their motion.  In Caruso, a

jury found that police officers who entered a home without a warrant in search of a child

whose mother alleged she had been abducted had acted unreasonably and violated the

Plaintiff's Fourth Amendment rights.  The Court found that the evidence established that

the police entered and illegally searched the home without a warrant.  47 F.3d 27, 32.  The

Court rejected the Defendants' Rule 50 motion, which contended that defendants had

entered the home because "they were considering the welfare of the child," and thus acted

reasonably.  Id. at 33.  The Court found that "that fact, standing alone, does not enable the

jury to conclude that the search was reasonable."  Id.  Other evidence allowed the jurors to

conclude that defendants acted unreasonably in entering the apartment.  Id.  Caruso, as

other cases considering the exigent circumstances exception, stands for the proposition

16

that exigent circumstances exist in light of all the facts of the case, and that a single act of warrantless entry can only be determined reasonable or unreasonable in light of the larger context. The larger context here, as explained above, indicates that the jury's decision was not seriously erroneous.

### ii. False Arrest

Plaintiffs' argument for a new trial on false arrest employs the same argument as stated above in reference to judgment as a matter of law. That argument focuses on whether the charge of obstruction of governmental administration requires physical interference on Tiffany Howard's part. That argument is about the law that applies to the case more than the facts that were before the jury. The motion for a new trial will be denied on the same grounds as the motion for judgment as a matter of law: the law that applies to this case permits a finding of probable cause when a person resists governmental administration by refusing a direct, legal order from the police. In any case, Plaintiff is simply incorrect that "[t]here was absolutely no evidence indicating that the Plaintiff barricaded her doorway or even locked the door." Plaintiff's Brief, dkt. # 114-3, at 5. Police testified that they had the door opened for them by a building manager. The door was obviously locked, and a reasonable interpretation would be that Plaintiff locked that door and refused to open it. A verdict that found that officers had probable cause to arrest Plaintiff under these circumstances was not egregious nor was it a serious miscarriage of justice. The Court will deny the motion in this respect as well.

### C. Verdict Slip

In their affidavit in support of their motion, Plaintiffs argue that the Court erred by

introducing a verdict slip inconsistent with the evidence. Plaintiffs do not address any part of this argument in their brief. Defendants respond that Plaintiffs waived the issue by failing to object to the verdict slip when the Court provided the slip for counsel to review. In any case, Defendants insist, the verdict slip was proper.

In his affidavit in support of Plaintiffs' motion for judgment as a matter of law, Plaintiffs' counsel contends that the verdict slip in this case was given in error. See dkt. # 114-1 at ¶ 25. Plaintiffs admit that the Court's charge on exigent circumstances and probable cause were correct, but argue that the Court did not ask the jury to decide those questions. The Court asked the jury two questions with reference to Plaintiffs' unlawful search and false arrest claims:

> Have Plaintiffs Tiffany Howard and A.M. proven, by a preponderance of the evidence, that any of the Defendants listed below unlawfully searched their residence in violation of their Fourth Amendment rights?

and

> Has Plaintiff Tiffany Howard proven, by the preponderance of the evidence, that any of the Defendants listed below falsely arrested her in violation of her Fourth Amendment rights?

Plaintiffs' motion contends that these questions misstated the law and confused the jury because the Court's instructions had established that the Defendants had the burden of proving exigent circumstances to enter the apartment and probable cause to arrest Tiffany Howard, yet the instructions stated that the burden for proving unlawful search and false arrest remained with the Plaintiffs. Plaintiffs speculate that the second question "could have lead the Jury to ignore the requirement that the Defendants carried the burden of proof to establish that they had probable cause to arrest the Plaintiff Tiffany Howard." Id.

The Court will address this issue, even though Plaintiffs do not offer any argument in their brief or legal support for their position that the Court misstated the burden of proof on the verdict slip.

Under Federal Rule of Civil Procedure 51, objections to the jury instructions or verdict sheet must be made "before the jury retires to deliberate." Jarvis v. Ford Motor Co., 283 F.3d 33, 56 (2d Cir. 2002). Courts have found that "'failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection . . . Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions.'" Id. at 57 (quoting Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 55 (2d Cir. 1992)). If, as here, a party fails to object to the verdict form before the jury begins deliberating, "a subsequent challenge based on that charge should be entertained only if the alleged errors are 'fundamental.'" Shade ex rel. Velez-Shade v. Hous. Autho., 251 F.3d 307, 312 (2d Cir. ). A "fundamental error" is one "'so serious and flagrant that it goes to the very integrity of the trial.'" Id. at 313 (quoting Modave v. Long Island Jewish Med. Ctr., 501 F.3d 1065, 1072 (2d Cir. 1974)). A party may obtain relief only when the alleged error is "even more egregious than the type of 'plain' errors that might suffice to excuse a procedural default in a criminal trial." Id. (citing Travelers Indem. Co. v. Scor Reinsurance Co., 62 F.3d 74, 79 (2d Cir. 1995)).

The Court finds that Plaintiffs did not object to the Court's verdict slip before the instructions and verdict slip were given to the jury. The record indicates that the Court held a conference with the parties' counsel before reading the instructions to the jury and offered the parties an opportunity to object to instructions given. The Plaintiffs objected to

19

the Court's charge on obstructing governmental administration in the second degree under New York law. See Transcript, dkt. # 130, at 393. The Plaintiffs disagreed, on the record, with the Court's interpretation of the type of resistance to governmental authority required before the statute could apply. Id. Plaintiffs repeated their objection to that portion of the charge the next day. See dkt. # 131 at 402-3. Plaintiffs also objected to the Court's decision not to instruct the jury on the dismissal of criminal charges against Tiffany Howard and the relation of that dismissal to probable cause (the court concluded that it was not relevant). Dkt. # 130 at 394-95. The only objection to the verdict slip placed on the record came from the Defendants, who had asked the Court to ask a particular question concerning the defense of exigent circumstances. Id. at 395-96. The record makes clear, therefore, that Plaintiffs did not object to the verdict slip before the jury received it, and have waived that issue.

Relief is available to the Plaintiffs under these circumstances, then, only if the Court committed "fundamental error" in crafting the verdict slip as it did. Plaintiffs' position here is that the court improperly shifted to them the burden of proof, apparently by not asking the jury directly to determine whether Defendants' had met their burden of proving by a preponderance of the evidence that exigent circumstances existed permitting them to enter the apartment and probable cause allowed them to arrest Tiffany Howard.

In instructing the jury, the Court informed that "[i]n this case the plaintiffs have the burden of proving by a preponderance of the evidence the elements that I will describe to you." Dkt. # 131 at 412. The Court then defined that standard as "the evidence that supports [plaintiffs'] claim is the more likely version of what occurred." Id. The Court

instructed the jury that "[i]f you find that plaintiffs have established their claim on each essential point on which they have the burden of proof, you will then consider whether the defendants have established their defense of exigent circumstances and/or probable cause. Defendants bear the burden of proving these defenses by a preponderance of the evidence." Id. The Court then explained the elements of each of the Plaintiffs' claims. See id. at 413-416. The Court also explained that an "exception" applied to the requirement that officers obtain a warrant before conducting a search: "if all of the circumstances known to the officers at the time would cause a reasonable, experienced officer to believe that there was an urgent need to render aid or take action and there was insufficient time to get a warrant" then "exigent circumstances" would excuse a failure to obtain a warrant. Id. at 416-17. A lack of exigent circumstances would cause the jury to "find that the officers' entry" violated Plaintiffs' rights. Id. at 417. The Court also explained that Defendants had the burden of proving that Tiffany Howard's arrest was supported by probable cause. Id. at 418. The Court explained probable cause under the circumstances. Id. at 419-20. After summarizing the elements of a false arrest claim, the Court reminded the jury that "the defendants have the burden of proving by a preponderance of the evidence that they had probable cause to institute an arrest of plaintiff." Id. at 421.

Plaintiffs' position is that the verdict slip, which asked the jury to conclude whether Plaintiffs had met their burden of proof on their claims, somehow misled and confused the jury about the law they were to apply. The Court finds no error here so fundamental that the very integrity of the trial is undermined. Indeed, the Court finds no error and would deny the motion even if not waived by the Plaintiffs. The verdict slip, as did the Court's

21

instructions, reiterated to the jury that the burden of proof ultimately rested with the Plaintiffs. The Court's instructions simply explained that the burden of proving the defenses raised by the Defendant Officers–exigent circumstances and probable cause–lay with the Defendants. The Court did not instruct the jury, and the verdict slip did not imply, that the Plaintiffs needed to refute the defenses raised by a preponderance of the evidence. The Court's instructions on these issues were clear, and "'juries are presumed to follow their instructions.'" Zafiro v. United States, 506 U.S. 534, 540 (1993) (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987). As such, Plaintiffs' motion will be denied on this point as well.

## IV.    CONCLUSION

For the reasons stated above, the Plaintiffs' motion for judgment as a matter of law or in the alternative for a new trial, dkt. # 114, is hereby **DENIED**.

**SO ORDERED.**

Dated: May19, 2015

Thomas J. McAvoy
Senior, U.S. District Judge

22